UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

*In the matter of arbitration between*

AM PROPERTY HOLDING II. CORP.

                         Petitioner,                        Index No.

     -against-

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 94,

                         Respondent.
-----------------------------------------------------------X

## PETITION TO VACATE ARBITRATION AWARD

Petitioner AM Property Holding Corp. ("AM Property" or "Petitioner") hereby petitions this Court, pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 to vacate the arbitration award entered in favor of Respondent International Union of Operating Engineers, Local 94 (the "Union" or "Respondent") and in support of such petition states as follows:

### SUMMARY OF THE ACTION

1.    AM Property brings this action to vacate the arbitrator's Opinion and Award (hereinafter the "Award") dated October 23, 2018 that was rendered in favor of Respondent for the reasons that the arbitrator exceeded her authority under the agreement and the award violates public policy.

### PARTIES

2.    AM Property is a corporation with its principal place of business at 352 7th Ave, New York, NY 10001.

3. The Union is a labor organization with its principal place of business at 305 West 44th Street, Mezzanine Floor, New York, NY 10036.

## JURISDICTION

4. This Court has personal jurisdiction over the Union because the Union continuously and systematically does business in New York, New York and the arbitration hearing was conducted in New York, New York.

5. The Court has subject matter jurisdiction pursuant to Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 and 28 U.S.C. §1331, as the arbitration award is subject to vacatur based on federal substantive law.

6. Venue is proper in this court pursuant to 9 U.S.C. § 10, because this is the district in which the award was made.

## FACTS

7. This arbitration arose from an allegation that AM Property had hired a non-union member to perform work covered by the CBA.

8. Thomas Colleran (hereinafter "Colleran"), a member of the Union, was hired by AM Property to work in a building located in 75 Maiden Lane, New York, New York 10038 (hereinafter the "Building") in 1998.

9. Colleran had the title of Chief Engineer and had several certifications and licenses. However, since the Building has a heating, ventilation and air-conditioning ("HVAC") system instead of a boiler, it was not necessary for Colleran to have a boiler license or be an engineer for the position at the Building.

10. The Building's HVAC system was not serviced by Colleran at any point during his employment. Instead, it was maintained and serviced by outside vendors and contractors.

11. Despite not needing a Chief Engineer in the building, AM Property hired Colleran as a favor to the Union to avoid Colleran from being laid off. There was no Union member in this building before Colleran and AM Property operates buildings that are much bigger than the Building at 75 Maiden Avenue without an engineer.

12. In or around January 2018, Colleran resigned his position and AM Property hired George Dushaj (hereinafter "Dushaj") to replace him.

13. Dushaj was not a member of the Union. It was not necessary for Dushaj to be an engineer or have any certifications or licenses because the mechanical work in the Building was performed by outside vendors, as it had been throughout Colleran's tenure.

14. Although Colleran held the title of "Chief Engineer" and Dushaj was the "Resident Manager," there was no distinction between the work performed by Colleran and Dushaj. The only distinction between Colleran and Dushaj was that Colleran was a member of the Union and Dushaj was not.

15. After Dushaj was hired, the Union filed a grievance, arguing that AM Property had violated the CBA by not applying the CBA to Dushaj.

16. When the grievance was not resolved, the Union submitted the matter to arbitration. The Union's argument was premised on the fact that AM Property had failed to apply the CBA.

17. At the arbitration, the Union had the burden of proving that Dushaj should have actually performed work covered by the CBA.

18. The Union failed to produce Colleran as a witness or any other evidence that the work actually performed by Colleran was bargaining unit work that needed to be done by a Chief Engineer.

19. Raymond Macco (hereinafter "Macco"), the Union's Business Agent for Lower Manhattan, testified that he had only been to the building two times and could not recall the exact nature of the visits. Macco also acknowledged that there was nothing in the contract or in any arbitration award that says HVAC work is bargaining unit work.

20. Macco conceded that the work claimed by the Union to be bargaining unit work was, in fact, often performed by members of Local 32BJ or by outside contractors and vendors.

21. Jeff Wasserman (hereinafter "Wasserman"), one of the Building's owners, testified that prior to Colleran's employment at the Building, there was a superintendent at the building who was a member of Local 32BJ and not an engineer.

22. Wasserman testified that the only reason Colleran was hired to work at the Building was because Kuba Brown (hereinafter "Brown"), the President of Local 94, asked him to hire Colleran as a favor to avoid laying him off.

23. Although the Union's original reason for filing the grievance was due to AM Property's failure to apply the CBA, during closing statements, the Union argued for the first time that the building violated Article I (3) of the CBA by subcontracting work performed by Colleran.

24. The switch in arguments was necessitated by the unambiguous record evidence that Dushaj was not a "Chief Engineer" covered by the CBA.

25. In light of this new argument, the arbitrator asked AM Property to submit invoices to establish that the work in question had been provided by outside contractors and vendors during Colleran's employment.

26. After the hearing, both parties were allowed to submit post-hearing statements. AM Property submitted a post-hearing statement and the invoices the arbitrator had requested. The Union, however, failed to submit its statement by October 2, 2018 and did not ask either AM

Property or the arbitrator for an extension of time. Instead, the Union simply submitted its post-hearing statement on October 10, 2018 without any reprimand from the arbitrator.

27. In the Award dated October 23, 2019, the arbitrator ruled in favor of the Union, concluding that AM Property had violated the contract by permitting non-union employees to perform union work. *See* Opinion and Award dated January 21, 2019 (hereinafter referred to as the "Award"), annexed hereto as Exhibit A.

28. The arbitrator based her ruling primarily on the fact that Colleran was a Union member and Dushaj was not and both men held the same position, without any regard to whether the work actually performed by Colleran and later Dushaj was bargaining unit work.

29. The arbitrator stated that AM Property violated the CBA because there was no indication that AM ever notified Local 94 that it wished to discontinue or contract out for work previously performed by Colleran.

30. Dushaj was not a subcontractor, he was an employee who performed the same work as Colleran did and the same work was contracted to outside contractors during both employees' tenures.

31. The arbitrator claimed that AM Property reduced the workforce in the building without permission from the Union despite there being no evidence that there was any reduction in force since Dushaj replaced Colleran.

32. The arbitrator admonished AM Property for bringing in a non-union employee and then subcontracting the entirety of the work out despite the fact that this practice had occurred during Colleran's employment, which AM Property proved with the invoices it submitted.

33. The Award indicated that AM property was liable for damages sustained by the Union when it did not pay wages to a Union member at the property and for any Benefit Fund contributions that would have been paid attendant to payment of those wages.

34. The Award is unclear and ambiguous as to what damages the Union sustained that would entitle it to wages. Further, the Award aims to force AM Property to hire a Union member to the position and discriminate against an employee for his failure to be a member of the Union, in strict violation of the National Labor Relations Act ("NLRA").

35. The Award was delivered to Petitioner on October 23, 2018.

## THE AWARD SHOULD BE VACATED

36. Courts are authorized to review arbitration awards issued under a collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").

37. Under Section 10(a) of the FAA, a district court may vacate an arbitration award:

   a. where the award was procured by corruption, fraud, or undue means;

   b. where there was evident partiality or corruption in the arbitrators, or either of them;

   c. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

   d. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

38. Arbitration awards may also be vacated if they violate public policy. The National Labor Relations Act represents such public policy.

39. The arbitrator exceeded her power by shifting the burden of proof from the Union to AM Property and misapplying the collective bargaining agreement.

40. The arbitrator's award is violative of the NLRA and therefore violates public policy.

41. For the foregoing reasons, the Award should be vacated.

## THE COURT SHOULD MODIFY THE AWARD IN THE ALTERNATIVE

42. Section 11 of the FAA allows a district court to modify or correct an arbitration award in the following circumstances:

    a. Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

    b. Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

    c. Where the award is imperfect in matter of form not affecting the merits of the controversy.

43. The Award is indefinite and ambiguous because it does not specify what harm or damages the Union has suffered that would entitle it to wages and benefits.

44. The Award also fails to credit AM Property for any wages it has already paid.

45. Although the Award should be vacated in its entirety, if the court decides not to vacate it, it should modify it for the foregoing reasons set forth herein.

## **RELIEF REQUESTED**

e.  Based on the foregoing, the Award must be vacated pursuant to federal law.

WHEREFORE, for the reasons set forth herein and in papers accompanying this Petition, AM Property requests an order of the Court:

a. Vacating the Award

b. Stay any future proceedings in the arbitration; and

c. Granting further relief as the Court may deem just and appropriate.

Dated: Garden City, New York
       January 21, 2019

　　　　　　　　　　　　　　　　　___/s/_____
　　　　　　　　　　　　　　　　　Martin Gringer, Esq.
　　　　　　　　　　　　　　　　　Daniel F. Carrascal, Esq.
　　　　　　　　　　　　　　　　　Franklin, Gringer & Cohen, P.C.
　　　　　　　　　　　　　　　　　*Attorneys for Petitioner*
　　　　　　　　　　　　　　　　　666 Old Country Road, Suite 202
　　　　　　　　　　　　　　　　　Garden City, New York 11530
　　　　　　　　　　　　　　　　　(516) 228-3131
　　　　　　　　　　　　　　　　　Mgringer@franklingringer.com